702 S.E.2d 562

**In the Matter of Fred Wallace WOODS, Jr., Respondent.**

**No. 26900.**

Supreme Court of South Carolina.

Submitted Nov. 8, 2010.

Decided Dec. 6, 2010.

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Desa A. Ballard, of Law Office of Desa Ballard, of West Columbia, for respondent.

PER CURIAM.

The Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR, in which respondent admits misconduct and consents to the imposition

of an admonition or a public reprimand. In addition, respondent agrees to complete the Legal Ethics and Practice Program Ethics School within one (1) year of the Court's opinion and to read and to require each of his employees to read the South Carolina Notary Public Manual published by the South Carolina Secretary of State within twenty (20) days of the date of the Court's opinion. We accept the agreement and issue a public reprimand. Further, respondent shall complete the Legal Ethics and Practice Program Ethics School within one (1) year of the date of this opinion and he shall read and require each of his employees to read the South Carolina Notary Public Manual published by the South Carolina Secretary of State within twenty (20) days of the date of this opinion. The facts, as set forth in the agreement, are as follows.

## FACTS

### Matter I

A staff member accompanied respondent during a lengthy initial consultation with a domestic client. The staff member had the client sign a verification of the complaint at the meeting even though the complaint had not yet been prepared. The staff member also notarized the verification at the initial consultation. Although the verification was executed before the complaint was drafted, a different member of respondent's staff reviewed the complaint with the client in detail by telephone before the complaint and verification were filed.

Later, just before a temporary hearing, the staff member who notarized the client's verification of the complaint presented the client with an affidavit for the client's signature which the staff member had already notarized. This staff member is no longer employed by respondent.

### Matter II

In June 2007, a North Carolina law firm serving as closing coordinator for a credit counseling agency asked respondent to perform a real estate closing on property located in South Carolina. The deed was prepared by a South Carolina attorney representing the seller.

After the closing, respondent provided the closing documents to the North Carolina law firm for disbursement of closing funds and recording of the deed and mortgage. The deed was not timely recorded by that law firm because it lacked a proper legal description.

Respondent was not advised that the deed had been rejected, but acknowledges he did not follow up to ensure it had been recorded. When he learned of the ongoing issue in November 2007, respondent took immediate action and a corrective deed was prepared and recorded. In February 2008, a second defect in the deed was discovered and corrected.

Respondent admits he did not notify the purchaser of the problems with the recording of her deed or the efforts he made to correct the same on her behalf. The purchaser independently learned that her deed had not been timely recorded and was unaware at the time of her complaint that the deed had recently been properly corrected and recorded.

## Matter III

Respondent represented the husband in a domestic case brought by the wife. At the start of a temporary hearing, respondent learned the court imposed an eight-page limit on affidavits. Respondent had intended to submit affidavits in excess of the page limit and, thus, selected three affidavits which complied with the court's rule. Respondent did not bring copies of the affidavits and other documents to the hearing. The court and opposing counsel agreed to proceed without the copies with the understanding opposing counsel would be provided with copies upon the arrival of respondent's staff member.

One of the submitted affidavits was that of respondent's client's mother who lived out-of-state, but whose affidavit was notarized by a member of respondent's staff. Respondent admits the document was not signed or affirmed by the client's mother in the notary's physical presence and it appears to have been signed by someone other than the client's mother.

Respondent explains that he and his employee spoke with his client's mother by telephone and video conference prior to

mailing the affidavit to her and that he spoke with her upon receipt of the signed affidavit. Although respondent acknowledges he was aware of how the document had been notarized and recognizes the notary procedure used was improper, he believed his client's mother had signed the document when he submitted it to the court. He further notes that his client's mother has since signed an affidavit which contains the same substantive information as the first affidavit.

Immediately after the hearing, respondent met with his client and employee in private before providing opposing counsel with copies of the documents he had submitted to the court. Respondent provided opposing counsel with six affidavits, including copies of the affidavits he had submitted to the court. Five of the affidavits bore "original signatures" for the affiants, while the signature of the notary on each document was a photocopy. Of those five affidavits, two bore signatures appearing to be those of the affiants (the client's sister and mother), although neither document had been signed by the purported affiant and neither document indicated it was a conformed copy. The client's mother and sister later signed statements containing the same substantive information contained in the original affidavits.

Soon after the hearing, respondent withdrew from the case as a result of a conflict of interest unrelated to these allegations, although he continued to represent his client for the limited purpose of preparing the temporary order requested by the court. Opposing counsel thereafter made several inquiries of respondent and his staff in an attempt to identify the notary appearing on the affidavits respondent had provided. Respondent did not respond to the inquiries because he did not believe he had a duty to confer with opposing counsel as to any subject other than the proposed order.

The staff member who notarized the affidavits provided to the court and opposing counsel in this matter is the same staff member who notarized the documents in Matter I. She is no longer employed by respondent.

## LAW

Respondent admits that, by his misconduct, he has violated the following provisions of the Rules of Professional Conduct,

450

Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter); Rule 3.3(a) (lawyer shall not knowingly offer false evidence); Rule 5.3 (lawyer shall make reasonable efforts to ensure that non-lawyer employee's conduct is compatible with professional obligations of lawyer; lawyer shall be responsible for conduct of non-lawyer employee if lawyer knows of conduct at time when its consequences can be avoided or mitigated and fails to take reasonable action); Rule 8.4(a) (it is professional misconduct for lawyer to violate Rules of Professional Conduct); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to the administration of justice). Respondent acknowledges that his misconduct constitutes grounds for discipline under the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for a lawyer to violate Rules of Professional Conduct) and Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

## CONCLUSION

We find that respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement for Discipline by Consent and publicly reprimand respondent for his misconduct. Within one (1) year from the date of this opinion, respondent shall complete the Legal Ethics and Practice Program Ethics School and Trust Account School and, within twenty (20) days of the date of this opinion, he shall read and require each of his employees to read the South Carolina Notary Public Manual published by the South Carolina Secretary of State.

**PUBLIC REPRIMAND.**

BEATTY, J., not participating.